IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL JERONE EDWARDS, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-05-0526 |
| | § | |
| DOUGLAS DRETKE, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| Respondent. | § | |

**MEMORANDUM OPINION AND ORDER**

Michael Jerone Edwards, a state inmate incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division (TDCJ), *pro se* and *in forma pauperis*, filed a petition for a writ of habeas corpus challenging his two convictions under 28 U.S.C. § 2254.[1] Respondent submitted a motion for summary judgment, to which petitioner has filed a response. (Docket Entries No. 14 and 16).

After consideration of the pleadings, the motion and response, and the relevant state court records, the motion for summary judgment is **GRANTED**, and this case is dismissed for the reasons discussed below.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

A jury found petitioner guilty of sexual assault under cause number 827178 in the 339th District Court of Harris County, Texas, and assessed punishment at ten years

---

[1] Petitioner filed separate federal habeas petitions challenging the two convictions, under C.A. No. H-05-0528, and C.A. No. H-05-0526. This Court ordered the two proceedings consolidated under C.A. No. H-05-0526. (Docket Entry No. 4).

incarceration and a fine. The conviction was affirmed on appeal. *Edwards v. State*, 97 S.W.3d 279 (Tex. App. – Houston [14th Dist.] 2003, pet. ref'd). His petition for discretionary review was refused on June 4, 2003. *Edwards v. State*, PDR No. 388-03. The Texas Court of Criminal Appeals denied petitioner's state application for habeas relief without a written order on findings of the trial court without a hearing. *Ex parte Edwards*, Application No. 58,220-02, p. 2.

Petitioner also was convicted of improper sexual activity with a person in custody under cause number 862982, and was sentenced to two years incarceration. This offense arose from the same operative facts as the sexual assault offense. After crediting petitioner for time already served, the trial court ordered the sentence to begin on October 26, 1999. The sentence expired on October 26, 2001, prior to the filing of this petition.

Petitioner filed the pending federal habeas corpus petition on August 27, 2003. He presents the following grounds for relief, which have been grouped by trial court cause number:

Under cause number 827178, petitioner complains of:

(1) prosecutorial misconduct in presenting perjured testimony;

(2) a *Brady* violation;

(3) ineffective assistance of counsel; and

(4) abuse of discretion by the trial court.

Under cause number 862982, petitioner complains of:

(1) a defective indictment;

    (2)    a *Brady* violation; and

    (3)    misidentification of his DNA.

Respondent moves for summary judgment and argues that all of petitioner's grounds fail as a matter of law.

## II.    LACK OF JURISDICTION

Respondent asserts that this Court lacks jurisdiction over petitioner's habeas challenge to cause number 862982. Petitioner does not dispute that as of the filing of this federal petition, he was no longer in custody under that conviction. Accordingly, this Court is without jurisdiction as to petitioner's claims arising from cause number 862982, and those claims are **DISMISSED FOR LACK OF JURISDICTION**. *See Maleng v. Cook*, 490 U.S. 488, 492 (1989).

## III.    FACTUAL BACKGROUND

The state court on direct appeal summarized the relevant facts under cause number 827178 as follows:

> The complainant was arrested in Corpus Christi, Texas, on an open warrant for theft charges filed against her in Harris County. After being in custody for fifteen days in Corpus Christi, she was transported to Houston in a van operated by TransCor America. It was during this transport to Houston that the offenses for which appellant was convicted took place.
>
> Although Houston is located only five hours from Corpus Christi, complainant's transport to Harris County took six days, involved more than eighteen stops, and resulted in her spending more than 114 hours in TransCor's control. Although TransCor policy mandates that female extradition agents accompany all female prisoners, none was assigned to complainant's van during her transport from Corpus Christi to Houston.

Initially there was a misunderstanding by TransCor drivers that complainant's warrant emanated out of Harrison County instead of Harris County. This resulted in complainant's spending 18 to 20 hours on the road the first day of her transport; first she was driven south to Texas' Valley area, then north to Belton, Texas. In Belton, complainant was left until a second transport vehicle could come to get her.

Although her trip from Corpus Christi to Belton was exhausting and uncomfortable, complainant raises no complaint against the first two TransCor drivers who transported her. She testified they behaved properly and were 'nice people.' When the next TransCor van came to pick up her up in Belton, however, it was operated by David Jackson and Michael Edwards, the appellant. It was during this portion of the trip that complainant testified she was sexually assaulted.

The TransCor van in which complainant was transported was divided into three areas. Female prisoners were confined in the middle section located behind the drivers's seats. A mesh screen separated them from the drivers; they were fed through two 8 x 8 [inch] portholes located in the screen.

All prisoners wore handcuffs and shackles around their ankles at all times except when using the restroom or overnighting at a correctional facility. Chains went from the prisoners' ankles to their handcuffs and around their waist, leaving just enough room to eat and drink. Complainant testified she could take only 'baby steps' and could scratch her head only when she lowered it into her lap. One witness testified prisoners could lift their hands only 'six inches from their stomachs, if that much.'

The incident for which appellant was tried and convicted was for the rape of complainant on October 19, 1999. The sexual assault occurred in the TransCor van on Interstate 10 while Jackson was driving. According to complainant's and Jackson's testimony, shortly before arriving at the Harris County Jail in Houston, appellant got behind the driver's seat, reached through the food porthole into the female prisoners' compartment, pulled complainant by her chains and hair to the porthole, and forced her to perform oral sex on him. Appellant ejaculated into complainant's mouth and on her shirt.

At trial, the State's evidence included the testimony of complainant, Jackson, and two other prisoners who traveled with complainant and appellant during the five-day trip from Belton. [FN. The only other passenger in the van during the incident– a Costa Rican native – was deported and did not testify at trial.

A sworn affidavit of his testimony was admitted by defense counsel as a bill of exception.]

According to testimony admitted at trial, several factors contributed to complainant's fear of appellant and her state of mind during the assault: appellant insisted prisoners call him 'boss man' throughout the trip; he did not allow talking among the prisoners; he used sexually explicit terms and fondled the female prisoners; and he terrorized complainant by forcing her to raise her shirt and bra to expose herself to other passengers and appellant. Appellant also reached into the female prisoners' compartment and penetrated complainant's vagina with his fingers, a flashlight, and handgun; he kept a shotgun on a rack above the female prisoners' heads; he conducted 'screen tests' for entertainment, whereby he would slam on the van's brakes, forcing prisoners to hit their faces against the wire screens; and he intimidated and humiliated the women prisoners by illuminating their faces and exposed breasts at night with flashlights.

On one occasion, appellant and Jackson pulled their van over to the side of the road and told the prisoners they were going to undo their chains, force them to run, and shoot them for attempting to escape. On another occasion, appellant slid a bar of soap under a bathroom door and told complainant to 'clean herself up for him.' Appellant and Jackson also threatened everyone in the van with a gun and said that if anyone said anything, they would 'take care of them'– which the prisoners interpreted to mean 'kill them.' Testimony indicates appellant and Jackson also threatened to use mace on the prisoners.

The witnesses testified that appellant and Jackson crossed the border into Mexico, got drunk, and visited prostitutes during the trip; they had beer, alcohol, and marijuana; and appellant told complainant he planned to visit a strip club in Houston and wanted her to 'prepare' him sexually for the visit. Appellant also warned complainant that he 'knew' people at the Harris County Jail who would treat her well if she was a 'good girl' and cooperated with his demands.

Soon after the sexual assault, complainant arrived at the Harris County Jail and disclosed her attack to authorities. Evidence indicated she had a split lip. In addition, it was discovered that two pieces of evidence complainant had secreted away during the trip – a business card of Jackson's and a list of names of fellow prisoners who might serve as witnesses – were missing from her bag of personal belongings. Authorities found them in a trash can near the inmate

>processing area; the only persons with access to these items who could have thrown them away were appellant and Jackson.
>
>Subsequent to appellant's arrest, complainant identified appellant in a line-up; investigators found semen stains on complainant's shirt that tested positive for complainant's and appellant's DNA; blood stains were found on her underwear; and samples of fluid taken from the floor of the van from behind the driver's seat tested positive for semen and appellant's DNA.

*Edwards*, 97 S.W.3d 282-84.  Petitioner does not rebut these facts as found by the state court with clear and convincing evidence, and this Court presumes the facts are correctly stated. *See* 28 U.S.C. § 2254(e).

## IV.    SUMMARY JUDGMENT MOTION

### A.    Summary Judgment Standard of Review

Respondent's motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  In deciding a motion for summary judgment under Rule 56, the court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The party moving for summary judgment bears the initial burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once the movant presents a properly supported motion for summary judgment, the burden shifts to the

nonmoving party to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

All of the evidence must be construed in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes. *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996). However, factual controversies are resolved in favor of the nonmovant only when there is an actual controversy—that is, when both parties have submitted evidence of contradictory facts. *Laughlin v. Olszewski*, 102 F.3d 190, 193 (5th Cir. 1996). In that regard, a fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Moreover, an issue is genuine, for purposes of a Rule 56 review, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.*

      **B.**     **Habeas Corpus Petitions Under AEDPA**

Petitioner's petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The intent of the AEDPA is to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent possible under the law, *Bell v. Cone*, 535 U.S. 685, 693 (2002), by limiting the scope of collateral review and raising the standard for federal habeas relief. *Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003).

Under the AEDPA, federal relief cannot be granted on claims adjudicated on the merits in state court unless the state adjudication was (1) contrary to clearly established

federal law as determined by the Supreme Court, or (2) involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor,* 529 U.S. 362, 404-05 (2000)*;* 28 U.S.C. §§ 2254(d)(1) and (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *See id.* at 409, 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see*

*also Miller-El*, 537 U.S. at 330-31. These standards will be applied to the pending summary judgment motion.

## V.    **PERJURED TESTIMONY**

Petitioner claims that false and perjured testimony was used against him at trial, and that the complainant and witnesses conspired to fabricate the offense in order to win a civil lawsuit against TransCor. In support, petitioner references numerous discrepancies in the testimony of trial witnesses during the criminal case, and in the testimony of witnesses given at depositions in the civil lawsuit. Petitioner claims that the State knowingly used the perjured testimony in order to convict him.

It is well-settled that the State may not knowingly use perjured testimony or allow perjured testimony to remain uncorrected. *Giglio v. United States*, 405 U.S. 150, 154 (1972). To prove a due process violation for use of perjured testimony, a petitioner must establish that (1) the testimony in question was actually false, (2) the prosecutor was aware it was false, and (3) the testimony in question was material. *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). Perjured testimony is material only when there is a reasonable likelihood that the false testimony could have affected the judgment of the jury. *Barrientes v. Johnson*, 221 F.3d 741, 756 (5th Cir. 2000). Contradictory testimony from witnesses, inconsistencies within a witness's testimony, and conflicts between reports, written statements, and trial testimony do not, standing alone, establish perjury. *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990).

In denying habeas relief, the state court on collateral review rejected petitioner's perjury claim, and entered the following relevant findings and conclusions:

> The Applicant offers only discrepancies in testimony in his attempt to make a case for perjury.
>
> The Applicant fails to make a case for perjury, or a case that the State knowingly used perjury.

*Ex parte Edwards*, pp. 170-71 (Finding of Fact No. 4, Conclusion of Law No. 2; citation omitted). The Court of Criminal Appeals based its denial of habeas relief on the habeas court's findings. *Id.*, p. 2.

The Court has carefully reviewed the numerous references petitioner makes to inconsistences and contradictions in the testimony of witnesses, and finds nothing in the record to substantiate his conclusory allegations that the State knowingly used perjured testimony at trial. Petitioner presents only discrepancies and inconsistencies in the record as "proof" of perjury, and this Court cannot independently evaluate the credibility of these trial witnesses or act in the capacity of a fact finder to substitute its judgment for that of the trial court and jury. The state court's determinations are not in conflict with established federal law and are not objectively unreasonable, nor has petitioner rebutted the presumption of factual correctness with clear and convincing evidence. Petitioner is not entitled to habeas relief on this ground.

## VI.   *BRADY* VIOLATION

Petitioner claims that the State deliberately withheld exculpatory evidence from him. To establish a violation under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), a petitioner must

show that (1) the State suppressed evidence; (2) the evidence was favorable to the defense; (3) the evidence was material either to guilt or punishment; and that (4) the evidence was not discoverable by the defendant through due diligence. Evidence is material only if there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *United States v. Bagley*, 473 U.S. 677, 682 (1985). The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of trial, does not establish "materiality" under this standard. *United States v. Agurs*, 427 U.S. 97, 109-10 (1976).

As the Court understands his argument as raised in his state habeas application,[2] petitioner complains that the State failed to inform the defense that a potential witness, Oscar Salmeron, was located in TDCJ and had not been deported to Costa Rica. *Ex parte Edwards*, p. 36. Salmeron testified in an affidavit taken shortly after the offense that he had been asleep during the trip to Houston, but did not observe any sexual assaults during the transport, and that everyone was smiling and laughing. The trial court ruled that the affidavit was inadmissible. Petitioner fails to present any probative evidence that the State knowingly withheld Salmeron's location from the defense. His claims to the contrary are conclusory and insufficient to preclude summary judgment on this issue.

---

[2] In his response to the motion for summary judgment, petitioner refers the Court to pages 18-19 and 34 of his supporting memorandum as establishing his *Brady* argument. (Docket Entry No. 16, p. 6). The Court has reviewed those references as well as the entire memorandum, and does not find any factual allegations by petitioner setting forth any exculpatory evidence that was deliberately withheld by the State. Accordingly, the Court has relied on petitioner's arguments as presented in his state habeas application.

In rejecting petitioner's *Brady* claim, the state habeas court found that "The Applicant fails to prove that the prosecutor in the case knowingly withheld the location of an exculpatory witness from the defense." *Ex parte Edwards*, p. 171 (Conclusion of Law No. 3). The Court of Criminal Appeals based its denial of habeas relief on the habeas court's findings. *Id.*, p. 2. The state court's determination is not in conflict with established federal law and is not objectively unreasonable, nor has petitioner rebutted the presumption of factual correctness with clear and convincing evidence. Petitioner is not entitled to habeas relief on this ground.

## VII.    INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor

of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland,* 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the defendant of any substantive or procedural right to which he is entitled. *Id.*

Petitioner asserts that trial counsel was ineffective in failing to investigate and present certain witnesses. In his affidavit submitted to the state habeas court, trial counsel testified as follows:

> Yes, I was aware of the potential witnesses. I was in constant contact with Mr. Manuel Escobar, so I was able to read the transcript of potential witnesses. He along with my investigator and even the State attempted to locate Mr. Oscar Salmeron.
>
> Further, during trial preparation the applicant and I discussed the merits of soliciting testimony of those witnesses and if it would be to his advantage or

> not. It was not my belief that any of the witnesses, with the possible exception of Mr. Salmeron would benefit applicant. Mr. Salmeron was never contacted, nor to my knowledge was he ever located.
>
> My trial strategy did take into consideration who the potential witnesses were, who they worked for and i[f] they would be of any benefit to the applicant.

*Ex parte Edwards*, pp. 113-113A. The state habeas court expressly found that trial counsel was a reliable and credible person, and that his affidavit explained his strategy and actions in representing petitioner. The state court further found that,

> Based on the affidavit of [trial counsel], [trial counsel] was aware of potential witnesses Donald McGee, Deputy Teresa Brown, Michael McIntosh, Dr. Edwin Johnston, and Mr. Oscar Salmeron. [Trial counsel] was able to read all of the transcripts of testimony given by all of the witnesses. During trial presentation, [trial counsel] discussed the merits of soliciting testimony from each of these witnesses with the Applicant. In [trial counsel's] sound judgment in strategy, only Mr. Salmeron was a witness who would substantively benefit the Applicant's case. However, Mr. Salmeron was never contacted because to [trial counsel's] knowledge, he has never been located.

*Ex parte Edwards*, p. 170-171 (Finding of Fact No. 6).

An independent review of the state court record shows that petitioner's claims of ineffective assistance of counsel regarding investigation and presentation of defense witnesses are conclusory and unsupported in the record. Petitioner fails to present affidavits or other probative, competent evidence of these alleged witnesses to establish their potential favorable testimony or their availability for trial, and fails to show that but for counsel's failure to obtain their testimony, the result of the trial would have been different. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985); *Boyd v. Estelle*, 661 F.2d 388, 390 (5th Cir. 1981). Petitioner makes references to the affidavit of Salmeron, but the trial court

14

rejected trial counsel's efforts to admit the affidavit into evidence. (R.R. Vol. 5, pp. 3-8). Petitioner presents no probative evidence that Salmeron was available for trial or for pretrial investigation.

Informed decisions of counsel are to be given a heavy measure of deference, and will not be second guessed by this Court. *See Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999). A conscious, informed decision on trial tactics and strategy cannot form the basis for constitutionally ineffective assistance of counsel unless it is so ill-chosen that it permeates the entire trial with obvious unfairness. *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir. 1983). Such an argument is not supported by the record before this Court.

The trial court found that petitioner failed to prove either deficient performance or prejudice, and that he was not denied effective assistance of counsel. *Ex parte Edwards*, p. 171 (Conclusion of Law No. 4). The Court of Criminal Appeals based its denial of habeas relief on the habeas court's findings. *Id.*, p. 2. The state court's findings reasonably applied the law to the facts, consistent with clearly-established federal law, and were not objectively unreasonable. 28 U.S.C. § 2254(d)(1). Habeas relief is unwarranted.

## VIII. <u>ABUSE OF DISCRETION</u>

Petitioner asserts that the trial court abused its discretion in failing to set a hearing on his motion for discovery to obtain favorable evidence. The record shows to the contrary. The trial court's docket sheet reflects that a hearing was held on petitioner's pretrial discovery motion on September 21, 2001, and that the motion was partially granted. *Ex*

*parte Edwards*, p. 103. Petitioner presents no supporting factual or legal arguments establishing an abuse of discretion by the trial court, and his claim is conclusory.

The state habeas court rejected petitioner's abuse of discretion argument, and found that, "Applicant fails to prove that the trial court abused its discretion in failing to afford him a hearing 'which might have tended to show his innocence during the pre-trial phase.'" *Ex parte Edwards*, p. 171 (Conclusion of Law No. 5). The Court of Criminal Appeals based its denial of habeas relief on the habeas court's findings. *Id*., p. 2. The state court's determination is not in conflict with established federal law and is not objectively unreasonable, nor has petitioner rebutted the presumption of factual correctness with clear and convincing evidence. Petitioner is not entitled to habeas relief on this ground.

To the extent that petitioner may be arguing that the state court abused its discretion in denying his motion for an evidentiary hearing on collateral review, his argument fails to state a cognizable ground for habeas relief. Alleged infirmities in state habeas proceedings are not grounds for federal habeas relief. *See Brown v. Dretke*, 419 F.3d 365, 377 (5th Cir. 2005); *Moore v. Dretke*, 369 F.3d 844, 846 (5th Cir. 2004).

## IX.  CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). This standard includes showing that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473,

484 (2000). Stated differently, where claims have been dismissed on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Id*. For the reasons stated above, the Court has determined that petitioner has not made the requisite showing under the applicable standard, and a certificate of appealability will be denied.

### X. CONCLUSION

Accordingly, the Court **ORDERS** as follows:

(1) Respondent's motion for summary judgment (Docket Entry No. 14) is **GRANTED**.

(2) Petitioner's claims under state court cause number 862982 are **DISMISSED FOR LACK OF JURISDICTION**.

(3) Petitioner's claims under state court cause number 827178 are **DISMISSED WITH PREJUDICE**.

(4) The petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

(5) A certificate of appealability is **DENIED**.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on December 21, 2005.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE